**In re Peter and Beverly SMITH, Debtors.**

**No. 04–11194–JMD.**

United States Bankruptcy Court, D. New Hampshire.

April 15, 2005.

John M. Sullivan, Esq., Preti Flaherty PLLC, Concord, NH, for the Debtor.

Lawrence P. Sumski, Esq., Manchester, NH, Chapter 13 Trustee.

Peter C.L. Roth, Esq., Senior Assistant Attorney General, Concord, NH, for the State of New Hampshire.

Mark P. Cornell, Esq., Concord, NH, for Plymouth Village Water & Sewer District.

## MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

### I. INTRODUCTION

This matter is before the Court on a Motion to Dismiss or Convert the Case to Chapter 7 pursuant to 11 U.S.C. § 1307 (Doc. No. 15) (the "Motion"), filed by Lawrence P. Sumski, the chapter 13 trustee, (the "Trustee"), alleging that the Debtors' unsecured claims exceed the statutory limitations for chapter 13. Two creditors, Plymouth Village Water & Sewage District (the "District") and the State of New Hampshire (the "State"), support the Motion claiming the debts owed to them are liquidated and therefore disqualify the Debtors from seeking relief under chapter 13. The Debtors filed an Objection to the Motion to Dismiss (Doc. No. 19) (the "Objection") contending the claims filed by the District and the State are unliquidated and therefore should not be used in the calculation to determine eligibility for chapter 13 under 11 U.S.C. § 109(e). The Debtors have also filed separate objections to the proofs of claim filed by the District and the State.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy

Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Debtors filed a petition under chapter 13 of the Bankruptcy Code on April 1, 2004. Only an individual with a regular income who owes less than $307,675.00 of noncontingent, liquidated, unsecured debts, and less than $922,975.00 of noncontingent, liquidated, secured debt on the petition date may qualify as a debtor under chapter 13 of the Bankruptcy Code. 11 U.S.C. § 109(e).

The Debtors' schedules indicates total unsecured claims of $272,245.78. This amount includes $222,346.49 of unsecured nonpriority claims in schedule F and $49,899.29 in unsecured deficiency claims for two creditors (Ford Motor Credit Company and Ganis Credit Card Corporation) in schedule D. Included in the schedule F amount is the obligation to the District as a contingent, unliquidated, disputed claim in the amount of $175,000.00 [1] and an obligation to the State as a contingent, unliquidated, disputed claim in an unknown amount [2]. Although the Debtors listed an executory contract for the lease of an automobile in schedule G, they did not list a corresponding unsecured debt obligation in schedule F. Finally, the Debtors listed no priority unsecured claims in schedule E.

In contrast to the schedules, the unsecured non-priority proofs of claim filed total $1,181,154.00 and the unsecured priority proofs of claim total $35,535.00. Based on the filed proofs, the Trustee contends the unsecured debt is an amount well over the statutory limitations of chapter 13. The issue before the Court is whether the Debtors are eligible for relief under chapter 13.

## III. DISCUSSION

### A. Determining the "Baseline"

The District begins its analysis at a baseline debt of $124,399.85 (the "District Baseline"). To obtain this number, the District added the total amount of all unsecured proofs of claim, the under-secured portion of secured claims and the scheduled unsecured debt of creditors who did not file a proof of claim (excluding the District, State and the IRS).

The Debtors apparently accept the concept of the District Baseline, but argue that it overstates the amount of unsecured debt. The Debtors argue the District Baseline should not include deficiency claims of secured creditors who will be treated as fully secured under the proposed chapter 13 plan, a motor vehicle lease claim assumed under the proposed chapter 13 plan, and scheduled claims if the creditor did not file a proof of claim. Unfortunately, the dispute between the parties over the calculation of the District Baseline has generated more heat than light. The District Baseline is simply not the proper starting point for determining the Debtors' eligibility for chapter 13.

■ Section 109(e) provides:

Only an individual with regular income that owes, *on the date of filing of petition,* noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent secured debts of less than $922,975 ... may be a debtor under chapter 13 of this title.

---

**1.** The District filed a proof of claim for $545,000.00 ("POC 10").

**2.** The State filed a proof of claim for $131,728.00 ("POC 14") for civil penalties under N.H. RSA 147–A.

[emphasis added] 11 U.S.C. § 109(e). Because chapter 13 eligibility is determined on the petition date, the Court begins its section 109(e) analysis with the Debtors' bankruptcy petition. *In re Slack*, 187 F.3d 1070, 1073 (9th Cir.1999)(a bankruptcy court cannot look to post-petition events to determine the amount of debt); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir. 1985) (chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith). Eligibility for chapter 13 is not based upon postpetition events such as allowed claims, filed claims, or treatment of claims in a confirmed chapter 13 plan. If such events determined eligibility for chapter 13, a debtor with claims exceeding the limits of chapter 13 could file a petition and hope to qualify if some creditors failed to file proofs of claim, notwithstanding the claims listed in schedules. The plain language of section 109(e) does not permit debtors to employ such a strategy. Likewise, a debtor may not intentionally gerrymander either the schedules or the treatment of claims in a chapter 13 plan to qualify for chapter 13. As long as a debtor's schedules are completed after the exercise of a reasonable level of diligence and are filed in good faith, the schedules will determine a debtor's eligibility for chapter 13. *cf. Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir.2001).

■ When it appears a debtor did not exercise reasonable diligence or good faith in completing and filing the schedules, the Court may look to other evidence, including postpetition events to determine eligibility. However, the beginning point of the eligibility analysis will be the Debtors' schedules (the "Baseline").

■ Schedule F of the Petition lists noncontingent, liquidated, unsecured debts, exclusive of the District and the State of $47,346.49. Schedule D shows unsecured deficiency obligations totaling $49,899.29.[3] The Debtors contend that calculation of the Baseline should not include the schedule D unsecured deficiency claim held by a creditor with a security interest in a motor vehicle ($4,899.29) because it arises from an obligation which under the proposed chapter 13 plan is treated as fully secured. The Debtors' argument is contrary to the language of the statute. The relevant point in time for analysis under section 109(e) is the date of the filing of the petition. Debtors cannot affect or alter their eligibility for chapter 13 by how they treat a claim in a confirmed chapter 13 plan, let alone in a proposed chapter 13 plan.

This Court adopts the reasoning of the courts which utilize a section 506(a) analysis in determining the amount of secured and unsecured debt for purposes of eligibility under section 109(e). *In re Soderlund*, 236 B.R. 271, 274 (9th Cir. BAP 1999) (adopting majority view that undersecured portion of a secured creditor's claim should be counted as unsecured debt for section 109(e) analysis); *In re Clark*, 91 B.R. 570, 572 (Bankr.D.Colo.1988) (as a matter of logic and consequences, an undersecured claim should be treated as part secured and part unsecured in determining eligibility under section 109(e)). On Schedule D the unsecured portion of secured debts total $49,899.29. There is no allegation the Debtors' schedule D is inaccurate or was filed in bad faith. Accordingly, the $49,899.29 in unsecured deficien-

**3.** Schedule D lists two deficiency claims. One held by a creditor with a security interest in a boat ($45,000.00) and the other by a creditor with a security interest in a motor vehicle ($4,899.29).

cy claims shown on schedule D shall be included in the Baseline.

■ The Debtors also contend that a scheduled unsecured claim arising from an automobile lease listed in schedule G should not be included in the Baseline because no payments were missed and the lease will be assumed under the terms of the proposed chapter 13 plan resulting in the claim being treated as fully secured. The status of the Debtors' payments on an automobile lease is relevant to determining their obligation under the lease but not the status of the obligation as secured or unsecured. A claim is treated as secured to the extent that the creditor has a lien on property of the estate. 11 U.S.C. § 506(a). No argument was raised that the automobile lease is not a true lease. In fact, the Debtors' schedules constitute an admission that it is a true lease. Since the leased automobile is owned by the creditor and not the bankruptcy estate, the claim cannot be a secured claim regardless of the payment status on the obligation. The holder of the lease has filed an unsecured proof of claim in the amount of $6,029.21, and the Debtors have not objected to the claim. Therefore, the obligation of $6,029.21 to the automobile lessor shall be included in the Baseline.

For the reasons discussed above, the Court determines the Baseline as follows:

| | |
|---|---|
| Schedule F (excluding the District and State) | $ 47,346.49 |
| Deficiency claims from schedule D | $ 49,899.29 |
| Automobile lease obligation from schedule G | $ 6,029.21 |
| Baseline | $103,274.99 |

### B. IRS Claim

■ The Debtors did not list any obligations for unpaid taxes in schedule E. On August 18, 2004, the IRS filed a proof of claim for $44,291.79 in unpaid taxes on account of the Debtors' failure to file federal income tax returns for 2000, 2002 and 2003 (the "IRS Proof"). The Debtors have not objected to the IRS Proof and have, in fact, provided for payment of the claim in their amended proposed chapter 13 plan dated November 15, 2004. The Court finds the Debtors did not exercise a reasonable level of diligence when they failed to list the IRS as a creditor. The Debtors did not file tax returns for three of the four years immediately preceding the filing of their petition. Their schedules contain no entry reflecting even the possibility of a debt to the IRS. It is incomprehensible to the Court that, after exercising a reasonable level of diligence, the Debtors would not have knowledge, or at least a concern, that some taxes were due. As business owners and operators, the Debtors can reasonably be expected to have a higher level of experience with and knowledge of tax matters, both business and personal, than an unsophisticated debtor. Nevertheless, their schedules do not contain even a hint that their tax returns had not been filed or that a tax may be due. The fact that the Debtors did not object to the IRS's claim, but, instead, promptly amended their proposed chapter 13 plan to include the IRS obligation, indicates they had some knowledge of a tax obligation at the time of the petition.[4] The Debtors' complete omission of any obligation to the IRS is indicative of, at worst, bad faith and, at best, a lack of reasonable diligence. In the absence of any tax obligation in the Debtors' schedules, the only evidence of the amount of the Debtors' obligations to the IRS is the proof of claim itself and the Debtors' amended proposed chapter 13 plan. Therefore, the Court will include the IRS Proof, in the amount of $44,291.79,

4. Statements in a proposed chapter 13 plan are admissible under Federal Rule of Evidence 801. *In re Soderlund,* 236 B.R. at 273.

in determining the Debtors' eligibility under section 109(e).

## C.   The District and State Claims

The two remaining debts to be considered in determining eligibility for chapter 13 are the obligations to the District and the State. The origin of the debt owed to both of these creditors is rooted in the disposal of hazardous waste in the floor drain of the Debtors' dry cleaning business. The Debtors' use and disposal of hazardous waste were the subject of an investigation and subsequent Administrative Order issued by the Department of Environmental Services on August 22, 2003 (the "Administrative Order"). The Administrative Order found that the Debtors' business violated N.H. RSA 147–A:4 by disposing of hazardous waste without a permit and "is liable for costs directly or indirectly resulting from the discharge of hazardous waste tetrachloroethylene to the Plymouth POTW, under N.H. RSA 147–A:9." The Debtors did not appeal the Administrative Order and, in fact, attempted to comply with remedial actions. The Debtors contend that both claims are unliquidated and should not be used to determine eligibility for chapter 13. The District and the State disagree.

■■■■ A claim[5] is "liquidated" if it is subject to ready determination and precision in computation of the amount due. *In re Vaughn*, 276 B.R. 323 (Bankr.D.N.H. 2002). The relevant determination is the amount of the creditor's claim rather than the debtor's ultimate liability after taking into account any defenses or counterclaims. *In re Sylvester*, 19 B.R. 671 (9th Cir. BAP 1982). The issue of whether a

debtor is liable for a particular debt is separate from whether that debt is liquidated as of the filing date for the purposes of section 109(e). *In re Vaughn*, 276 B.R. at 326. A dispute over the underlying debt does not preclude inclusion in a section 109(e) analysis as long as the debt is otherwise non-contingent and liquidated. *Id.* "Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability." *U.S. v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996). The Court will include readily ascertainable amounts in the eligibility determination even if the liability is disputed. *In re Scovis*, 249 F.3d at 984. The Debtor contends the amount of the claims of the District and the State are not readily discernable and therefore cannot be included in the section 109(e) analysis.

### 1.   The District Claim

■■■■ The Debtors listed their obligation to the District in schedule F as a contingent, unliquidated, disputed, unsecured claim in the amount of $175,000.00. The District filed a Proof of Claim in the amount of $545,000.00, which presumably includes not only clean-up costs but also treble damages and attorney's fees to be assessed pursuant to New Hampshire statute as a result of the illegal disposal of hazardous wastes into the District's sewage treatment plant.[6] However, at the hearing on the Motion, the Debtors and the District agreed, for eligibility determination purposes only, to limit the amount of the District claim to $156,562.28. This amount is derived from actual pre-petition clean-up costs incurred by the District with relation to the Debtors' discharge of

**5.** A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11

U.S.C. § 101(5)(A). A debt is the "liability on a claim." 11 U.S.C. § 101(12).

**6.** The District did not file any supporting documentation to its Proof of Claim.

hazardous wastes into the public sewer system.[7] Thus, based on the agreement of the parties, for the purpose of this analysis, the Court will limit the amount of the District claim to $156,562.28.

The Debtors contend the claim of the District is unliquidated because the District's response to the containment and disposal of the contaminated wastes was not reasonable under the circumstances. The Debtors further argue that because the District's claim turns on the "reasonableness" of the District's response and its failure to mitigate damages, it is more like a tort claim which cannot be readily determined and is, therefore, unliquidated. The Debtors also assert the District has no independent cause of action under the New Hampshire environmental statute.

The Court is not persuaded by these arguments. To begin, the New Hampshire Supreme Court has specifically stated a private cause of action exists under N.H. RSA 147–A. *Bagley v. Controlled Environment Corp.*, 127 N.H. 556, 503 A.2d 823 (1986) (finding a private cause of action for failure to obtain a permit). Second, on August 22, 2003, the Department of Environment Services issued Administrative Order No. WMD 03–20 finding numerous violations of N.H. RSA 147–A et seq. The Administrative Order specifically stated that "Circle Tri Cleaners is liable for the cost incurred by DES for the containment, cleanup or removal of hazardous waste tetrachloroethylene from the Plymouth POTW." Even if the Debtors have defenses that may decrease the amount of the District's claim based on reasonableness of expenditures or a failure to mitigate damages, it does not affect the character of the claim. *In re Sylvester*, 19 B.R. 671, 673 (9th Cir.BAP1982) (the exis-

tence of defenses or counterclaims did not affect the character of the claim as liquidated); *In re Clark*, 91 B.R. 570, 575 (Bankr.D.Colo.1988) (denial of liability in the nature of counterclaims, affirmative defenses, setoff, or mitigating circumstances do not affect the character or amount of a claim for eligibility purposes). The Debtors' obligations to the District arise primarily under the provisions of N.H. RSA 147–A:9(I), which imposes strict liability for costs directly or indirectly resulting from a violation of specified hazardous waste laws. The Debtors' liability to the District is based upon actual costs, therefore the obligation will, of necessity, be a liquidated claim because it can be readily determined with precision through simple arithmetic computation. The Debtors may dispute the components included in the District's claim, but that does not alter its character as a liquidated claim. Because the District claim is liquidated, the Court will include it in the eligibility analysis in the agreed upon amount of $156,562.28.

### 2. The State Claim

██ In contrast to the District, the proof of claim filed by the State is based entirely on civil penalties calculated under N.H. RSA 147–A as a result of the Debtors' improper disposal of hazardous waste. The New Hampshire statute provides that "any person shall be subject to a civil forfeiture of up to $50,000 for each day of a continuing violation." N.H. RSA 147–A:17. To determine the amount of the assessed penalty, the State utilized the facts and findings set forth in the Administrative Order as applied to the EPA Penalty Matrix. Although the State acknowledges it must utilize some discretion in

---

7. The agreed amount of the claim is the arithmetic sum of invoices from various environmental service contractors, consultants, laboratories, law firms and specified labor and administrative costs.

determining the nature and seriousness of the Debtors' actions to determine the amount of the penalty, its calculations are limited by the facts of the case as applied to a penalty matrix, as well as the statutory limitation of $50,000.

The Debtors argue the decision to use a penalty matrix is discretionary and that, in and of itself, makes the State proof of claim unliquidated. The Debtors also contends the determination of the appropriate penalty is discretionary because the State must make subjective valuations regarding the degree of the harm (e.g. major, moderate, minor) resulting from the Debtors' actions as applied to the matrix and the actual penalty assessed is within a range of possible outcomes.

To begin, the fact the State chooses to use a certain methodology to calculate the penalty when it could, in fact, use a different methodology does not, in and of itself, make the claim unliquidated. The relevant question is whether the penalties claimed by the State are subject to ready determination using the methodology chosen by the State. However, the Court agrees with the Debtors that the determination of the penalty in the context of the penalty matrix is an exercise in discretion and is not subject to ready determination and precision in computation of the amount due. *U.S. v. Verdunn,* 89 F.3d 799, 802 (11th Cir.1996) (where a claim is dependent upon the future exercise of discretion, not restricted by specific criteria, the claim is unliquidated); *In re Vaughn,* 276 B.R. 323, 326 (Bankr.D.N.H.2002).

Proper use of the penalty matrix necessarily requires discretionary judgments regarding the seriousness and nature of the Debtors' actions to reach a final penalty amount. Thus, unlike a simple contract action, the Court could not independently determine the amount of the penalty obtained by the State simply by looking at the facts and applying them to the matrix.

Simply because the amount of the penalty is estimated in good faith does not change the fact the actual amount of the penalty is dependent upon the exercise of discretion. Although the amount of the penalty is limited by the New Hampshire statute, there is a range of possible outcomes dependent on a discretionary determination of the seriousness of the violations then applied to the penalty matrix.

The State's claim in this case stands in distinction to the fraud penalty at issue in *Verdunn.* In *Verdunn,* the penalty was fixed prepetition in the IRS demand letter based upon statutorily mandated calculations. *Verdunn,* 89 F.3d at 803 (citing *In re Knight,* 55 F.3d 231, 235 (7th Cir.1995)). The facts dictated one result. The IRS did not need to exercise discretion in assessing the degree of harm resulting from the Debtors' failure to pay taxes. The penalty in *Verdunn* was "computed through the application of fixed legal standards set forth in the tax code." *Id.* This case differs from *Verdunn* in one other significant respect. There is nothing in the record, or in the State's Proof of Claim, which establishes that the State assessed the penalty before the bankruptcy filing. In fact, the penalty assessment spreadsheet attached to its Proof of Claim contains the following heading: "Prepared by NHDES 6/4/2004, 1–Jun–04 Circle Tri Cleaners Penalty Assessment." Consequently, the Court need not decide whether a prepetition assessment of the State's penalty claim would render the claim unliquidated. The record before the Court does not indicate that a penalty had been levied before the filing of the petition.

The Court finds although the State claim existed on the date of filing of the Debtors' petition, it had not been assessed and was subject to the exercise of discretion in the application of a penalty matrix. Accordingly, the State's claim was unliquidated on the date of filing of the petition.

Therefore, the State claim shall not be utilized to determine the Debtors' eligibility for chapter 13.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that for purposes of determination of the Debtors' eligibility for chapter 13 under section 109(e) of the Bankruptcy Code, the Debtors' unsecured debts on the petition date were:

| | |
|---|---|
| Baseline | $103,274.99 |
| IRS Claim | $ 44,291.79 |
| District Claim | $156,562.28 |
| Liquidated Unsecured Debt | $304,129.06 |

Because the Debtors' noncontingent, liquidated, unsecured debts are less than the $307,675.00 limitation in section 109(e), they are eligible for chapter 13 and the Motion shall be denied.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.