**Ted Read Lloyd DE JOUNGHE and Marisa Varela Giacoy, Debtors.**

**Ted Read Lloyd de Jounghe and Marisa Varela Giacoy, Appellants,**

v.

**Wigberto Lugo Mender, Chapter 7 Trustee, Appellee.**

**BAP No. PR 05-013.**

**Bankruptcy No. 03-13858-ESL.**

United States Bankruptcy Appellate Panel for the First Circuit.

Dec. 12, 2005.

Fernando L. Gallardo, San Juan, PR, on brief for Appellants.

Carlos E. Rodriquez Quesada, San Juan, PR, on brief for Appellee.

Before VOTOLATO, DEASY and ROSENTHAL, U.S. Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

This matter is before the Panel on the Debtors' appeal from an order of the United States Bankruptcy Court for the District of Puerto Rico (1) denying their motion to convert their Chapter 11 case to a Chapter 13 case, and (2) dismissing their bankruptcy case. For the reasons set forth below, the decision is AFFIRMED.

## BACKGROUND

On December 23, 2003, Ted Read De Jounghe and Marisa Varela Giacoy ("Debtors") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[1] Thereafter, the Debtors filed their schedules. In February, 2004, the Debtors filed a notice of conversion to Chapter 11, which the bankruptcy court granted on March 25, 2004. After the conversion, the bankruptcy court issued an order dated July 27, 2004, directing the Debtors to: (1) file lists, schedules and statements as required by Bankruptcy Rule 1007; (2) appear at the § 341 meeting of creditors; (3) file a plan of reorganization and disclosure statement within 180 days from the filing of the Chapter 11 petition (or by September 27, 2004); (4) file monthly operating reports; and (5) pay quarterly fees to the U.S. Trustee. The order also stated that "[f]ailure to comply may constitute cause under 11 U.S.C. § 1112(b) for the dismissal or conversion to Chapter 7 of the Chapter 11 petition."

On September 2, 2004, creditor Enilda Jiménez filed a motion to dismiss the case based on the Debtors' alleged failure to submit monthly operating reports and "procedural conduct" causing "unreasonable delay that is prejudicial to creditors." The Debtors opposed the motion, claiming that they had filed the requisite operating reports.

The Debtors did not file a disclosure statement or plan of reorganization by the September 27, 2004 deadline, nor did they request an extension of the deadline. Instead, on that date, the Debtors filed a motion to convert the case to Chapter 13. On October 5, 2004, in response to Creditor Jiménez's motion to dismiss and the Debtors' motion to convert to Chapter 13, the bankruptcy court issued an order directing the Debtors to show cause why the request for conversion to Chapter 13 should not be denied for lack of eligibility under § 109(e), and why the case should not be dismissed for unreasonable delay prejudicial to creditors ("Show Cause Order"). The Debtors were required to file their response within 30 days, or by November 4, 2004.

In the meantime, on October 27, 2004, creditor Raul Hernandez Gonzalez filed a motion opposing conversion to Chapter 13, arguing that the Debtors did not meet the eligibility requirements under § 109(e) and requesting dismissal of the case under § 1112(b) for failure to propose a plan. The Debtors objected. In addition, on November 1, 2004, the Debtors filed a response to the Show Cause Order, arguing that they met the eligibility requirements of § 109(e). Creditor Hernandez filed an opposition to the Debtors' response to the Show Cause Order.

1. All references to the "Bankruptcy Code" and all references to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

The bankruptcy court scheduled a hearing for February 15, 2005 to consider: (1) the motion to convert to Chapter 13; (2) Creditor Hernandez's motion objecting to conversion and to dismiss the case; (3) the Debtors' response to the Show Cause Order; (4) Creditor Hernandez's opposition to the Debtors' response to the Show Cause Order; and (5) the Debtors' objection to Hernandez's motion to dismiss. A few days before the hearing, the Debtors filed an adversary proceeding against Creditor Hernandez, seeking to set aside as a preferential transfer his pre-petition attachment of stock that the Debtors hold in Lupi's Enterprises, Inc.[2]

At the February 15th hearing, after hearing from the parties, the bankruptcy court denied the Debtors' motion to convert to Chapter 13, and dismissed the bankruptcy case. The Debtors filed a timely notice of appeal on February 25, 2005. On that same date, the Debtors filed a motion to convert to Chapter 7, and a motion for a stay pending appeal. From a review of the docket, it does not appear that the bankruptcy court took any action on either motion.

## JURISDICTION

The bankruptcy appellate panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or, "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646. An interlocutory order "'only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)).

## STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from the bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994).

■ Whether a debt is "noncontingent" and "liquidated" for purposes of § 109(e) is an issue involving interpretation of the Bankruptcy Code and therefore a question of law subject to *de novo* review. *See Slack v. Wilshire Ins. Co.*, 187 F.3d 1070, 1073 (9th Cir.1999) (citing *Federal Deposit Ins. Corp. v. Wenberg (In re Wenberg)*, 94 B.R. 631, 633 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990)). However, the determination of the amount of any such debt is a question of fact and cannot be reversed unless clearly erroneous. *Id.*

■ A bankruptcy court's decision to dismiss a case under § 1112 is reviewed for an abuse of discretion. *See In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir.1991). A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *See Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 570 (1st Cir.2002) (citation omitted).

## DISCUSSION

### I. Lack of An Evidentiary Hearing

■ The Debtors contend that the bankruptcy court did not give them the

---

**2.** Lupi's Enterprises, Inc. operates a Mexican food restaurant in Isla Verde, Puerto Rico.

opportunity for an evidentiary hearing on the merits of the motion to convert and the motion to dismiss. On February 15, 2005, the bankruptcy court, after notice, conducted a hearing on the motions at issue in this appeal. The transcript of the bankruptcy court hearing on February 15, 2005 reflects that the court conducted a 72 minute hearing at which counsel for the Debtors appeared and was heard. At no point in the transcript did counsel for the Debtors request an evidentiary hearing, offer any witnesses or offer any documentary evidence. The minutes of the hearing state "1) No witnesses or evidence presented. 2) Issues presented through oral argument." The Debtors did not request the bankruptcy court to alter or amend its order pursuant to Federal Rule of Bankruptcy Procedure 9023.

█ Section 1112 permits the bankruptcy court to convert or dismiss a chapter 11 proceeding "after notice and a hearing." The term "after notice and a hearing" means after such notice and such opportunity for hearing as is appropriate. 11 U.S.C. § 102(1)(A). However, a full evidentiary is not required, so long as the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions. *Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1, 3 (1st Cir.1998); *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 894 (1st Cir.1988); *In re Cabral*, 285 B.R. at 576. The Debtors did not request an evidentiary hearing before the bankruptcy court or even offer any evidence. They did not contemporaneously object to the nature of the hearing conducted by the bankruptcy court. The failure to offer evidence at the hearing may constitute a waiver by the debtors.

*See In re City Stores Co.*, 42 B.R. 685, 689 (S.D.N.Y.1984). Even if the Debtors didn't waive any right they may have had to an evidentiary hearing, they failed to raise that issue with the lower court. Absent extraordinary circumstances not present in this case, the Debtors may not raise it for the first time on appeal. *Sammartano v. Palmas Del Mar Properties, Inc.*, 161 F.3d 96, 97–98 (1st Cir.1998).

## II. Motion to Convert to Chapter 13

Section 1112(d) of the Bankruptcy Code governs conversion of a case from Chapter 11 to Chapter 13. It states in pertinent part:

> The court *may* convert a case under [Chapter 11] to a case under chapter 12 or 13 of this title only if—
>
> (1) the debtor requests such conversion;
>
> (2) the debtor has not been discharged under section 1141(d) of this title . . .

11 U.S.C. § 1112(d) (emphasis added). Although the language of § 1112(d) permits the bankruptcy court to exercise its discretion in converting a Chapter 11 case to Chapter 13, subsection (f) dictates that such a conversion is permissible only if the Chapter 11 debtor originally would have qualified as a debtor under Chapter 13. *See* 11 U.S.C. § 1112(f).[3] The language of § 1112(f) is not expansive but constrictive, further limiting the circumstances for conversion under §§ 1112(a)-(e). *See In re Tornheim*, 181 B.R. 161, 169 (Bankr. S.D.N.Y.1995) (stating that in addition to prerequisites set forth in § 1112(d), debtor seeking to convert case from Chapter 11 to Chapter 13 must satisfy requirements of

---

3. Section 1112(f) provides:
Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.
11 U.S.C. § 1112(f).

§ 1112(f)); *In re Reppert,* 84 B.R. 37, 40 (Bankr.E.D.Pa.1988) (suggesting that debtor's case could not be converted from Chapter 11 to Chapter 12 because in addition to not satisfying requirements of § 1112(d), debtor did not satisfy § 1112(f) requirements).

Section 109(e) sets forth the requirements a debtor must meet to qualify as a Chapter 13 debtor. Under § 109(e), "only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than [$290,525][4] ... may be a debtor under Chapter 13." 11 U.S.C. § 109(e). The bankruptcy court concluded that the Debtors did not establish their eligibility to proceed as Chapter 13 debtors as their noncontingent, liquidated, unsecured debts exceeded the statutory limit.

### A. Scheduled Debts

The bankruptcy court first observed that in their Schedule F, the Debtors listed general unsecured claims totaling $417,699.30, clearly exceeding the statutory limit. The Debtors admit that the unsecured debts identified in their initial schedules exceed the statutory limit, but claim that their "amended schedules," answer to the Show Cause Order, and opposition to Creditor Hernandez's motion to dismiss show that their noncontingent, liquidated, unsecured debts meet the statutory cap.[5]

 As a preliminary matter, the Debtors' reliance on their "amended schedules" is misplaced. Generally, errors and omissions in a debtor's schedules and statements may be remedied by amendment pursuant to Bankruptcy Rule 1009(a). Bankruptcy Rule 1009(a) provides that debtors may amend their schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr.P. 1009(a). Although the rule is liberal, it does not afford debtors a completely unfettered right to amend deficient schedules and statements. *See, e.g., Kaelin v. Bassett (In re Kaelin),* 308 F.3d 885, 889 (8th Cir.2002) ("The policy of freely allowing amendment, while the case is still open, is not an absolute and can be tempered by the actions of the debtor or the consequences to the creditors."); *Arnold v. Gill (In re Arnold),* 252 B.R. 778, 784 (9th Cir. BAP 2000) ("Rule [1009] is liberal, but is subject to some judge-made exceptions...."). Although the Debtors filed a motion seeking to clarify their debts, the Debtors failed to comply with the procedural requirements for amending schedules contained in Bankruptcy Rules 1008 and 1009. Most importantly, they never actually filed amended schedules which were either verified or which contained an unsworn declaration. *See* Fed. R. Bankr.P. 1008. Consequently, the bankruptcy court did not err in concluding that the schedules were never amended.

Since there were no amended schedules and the original schedules admittedly were inaccurate, the bankruptcy court determined that it was entitled to look beyond the schedules to determine the amount of unsecured debt. The bankruptcy court

---

4. The applicable threshold amount at the time that the Debtors filed their bankruptcy petition was $290,525. The Judicial Conference of the United States adjusted the dollar amounts in section 109(e) effective April 1, 2004 to $307,675. *See* Notice dated February 18, 2004, 69 F.R. 8482.

5. In determining their eligibility, the Debtors began with their total amount of scheduled unsecured debts and then deducted from that amount those debts that were either scheduled as "disputed" or which they claim were incorrectly identified as unsecured debts in their original schedules.

observed that two unsecured creditors, O'Neill & Borges ("O & B") and Lupi's Enterprises, Inc. ("Lupi's") (collectively, "Creditors"), had claims totaling more than $300,000,[6] and that those claims alone were enough to disqualify the Debtors from Chapter 13 eligibility as they exceeded the statutory limit.

The Debtors have raised several arguments as to why the bankruptcy court should not have included the debts owed to the Creditors in its § 109(e) calculation. First, the Debtors argue that because the Creditors were listed as creditors with an "unknown" amount, the bankruptcy court should not have considered the amounts listed on their proofs of claim in determining eligibility under § 109(e). The Debtors also contend that the claims are not "liquidated" within the meaning of § 109(e) because they are disputed. These arguments are discussed below.

### B. Debts of "unknown" amount

■■■ Generally, eligibility for Chapter 13 is based upon debts as of the petition date and not upon post-petition events such as allowed claims, filed claims, or treatment of claims in a confirmed Chapter 13 plan. *See Slack*, 187 F.3d at 1073; *In re Smith*, 325 B.R. 498, 502 (Bankr. D.N.H.2005). Therefore, Chapter 13 eligibility is usually determined by the debtor's schedules. *See id.* As long as a debtor's schedules are completed after the exercise of due diligence and are filed in good faith, the schedules will determine a debtor's eligibility for Chapter 13. *See Smith*, 325 B.R. at 502. Therefore, the starting point of the eligibility analysis is the debtor's schedules. However, when it appears the

debtor did not exercise reasonable diligence or good faith in completing and filing the schedules, the bankruptcy court may look to other evidence, including post-petition events, to determine eligibility. *See id.; see also In re Sullivan*, 245 B.R. 416, 418 (S.D.Fla.1999) (rejecting argument that § 109(e) eligibility inquiry should be restricted to review of debtor's schedules); *Soderlund v. Cohen (In re Soderlund)*, 236 B.R. 271, 273 (9th Cir. BAP 1999) (bankruptcy court may look past schedules to other evidence submitted when good faith objection to debtor's eligibility under § 109(e) is raised); *In re Brown*, 302 B.R. 913, 915 (Bankr.D.Or. 2003) ("The limits created by § 109 are jurisdictional. In determining the amounts, a bankruptcy court may look past the schedules to other evidence submitted, including proofs of claim filed in the case").

■■■ In addition, a debtor's designation of a debt as "unknown" or "unliquidated" does not settle the question. "The bankruptcy court can scrutinize and redesignate the characterization by a debtor of any given debt when that characterization is the subject of a case or controversy...." *In re Stern*, 266 B.R. 322, 326 (Bankr.D.Md.2001) (remarking that debtor's labeling of claim as "unliquidated" did not make it so); *see also In re Redburn*, 193 B.R. 249, 255 (Bankr.W.D.Mich.1996) ("Although a court should rely primarily upon the debtor's schedules the court is not necessarily bound by the information contained in a debtor's schedules where it appears to a legal certainty that the amount owed is other than what the debt-

---

6. O & B was scheduled as an unsecured creditor with an "unknown amount" and an "unliquidated" and "disputed" claim. O & B subsequently filed a proof of claim in the amount of $106,656.67. Lupi's was scheduled as an unsecured creditor with an "un-

known amount" and with a "contingent," "unliquidated" and "disputed" claim. Lupi's subsequently filed a proof of claim in the amount of $262,095. The Appendix does not contain copies of either proof of claim.

or says is owed...."). Accordingly, a debtor may not intentionally manipulate either the schedules or the treatment of claims to qualify for Chapter 13.

■ The Debtors in this case admit that their original schedules were filed incorrectly. Without accurate schedules or properly amended schedules, the bankruptcy court was justified in looking beyond the schedules to the Creditors' proofs of claims to determine the amount of debt owed to those Creditors.

## C. "Noncontingent" and "liquidated" debts

As noted above, § 109(e) provides a statutory limit for "noncontingent, liquidated, unsecured debts." The Debtors argue that the bankruptcy court erroneously included unliquidated amounts (namely, the Creditors' claims) in its § 109(e) Chapter 13 eligibility calculation.

### 1. Is the debt contingent?

■ The case law uniformly holds that if all events giving rise to liability occurred prior to the filing of the bankruptcy petition, the debt is not contingent. *See, e.g., In re Huelbig,* 299 B.R. 721, 723 (Bankr.D.R.I.2003); *In re Vaughn,* 276 B.R. 323, 325 (Bankr.D.N.H.2002); *In re Mitchell,* 255 B.R. 345, 359–60 (Bankr. D.Mass.2000) (citing cases). The Debtors do not dispute that the debt owed to O & B is noncontingent for purposes of § 109(e). The Debtors appear to argue that the Lupi's debt is contingent because "the Debtors had filed an adversary proceeding alleging that debtors' Lupi's stock was subject to a Sec. 547 challenge dealing with creditor Raul Hernandez (Adv. Proceeding 05–0019, Docket 77 of Feb. 9, 2005, App. page 108)." However, despite the Debtors' classification of the Lupi's debt as "contingent," there is no real **dispute that all events giving rise to the Debtors' liability occurred well before** the petition was filed. Therefore, the dispositive question is whether the debts are liquidated.

### 2. Is the debt "liquidated"?

■ Although having a liquidated debt below the threshold amount is a precondition of Chapter 13, "liquidation" is not defined in the Bankruptcy Code. The terms "liquidated" and "unliquidated" generally refer to a claim's value (and the size of the corresponding debt) and the ease with which that value can be ascertained. *See Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295, 304 (2d Cir.1997) (citing cases). If the claim is subject to "ready determination and precision in computation of the amount due," it is generally viewed as liquidated. *See Huelbig,* 313 B.R. at 544; *Vaughn,* 276 B.R. at 325 (quoting *In re Keenan,* 201 B.R. 263 (Bankr.S.D.Cal.1996)); *Mitchell,* 255 B.R. at 360 (same). If that value depends instead on "a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." *Mazzeo,* 131 F.3d at 304 (citing *United States v. Verdunn,* 89 F.3d 799, 802 (11th Cir.1996)). Therefore, courts have generally held that a debt is "liquidated" ... where the claim is determinable by reference to an agreement or by a simple computation. Lawrence P. King, 2 *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev.1997) (citing case).

■ The Debtors urge us to consider the issue of the Debtors' liability to determine whether the claims are liquidated. They claim that because there is a "bona fide dispute" regarding their liability on the underlying debt, the Creditors' claims are "unliquidated". A few courts have held that the existence of a dispute, without more, is sufficient to render a claim unliquidated. *See, e.g., In re Lambert,* 43

B.R. 913, 921 (Bankr.D.Utah 1984) (stating that dispute as to liability renders entire debt unliquidated); *In re King,* 9 B.R. 376, 378 (Bankr.D.Or.1981) (stating that "a debt is not liquidated if there is a substantial dispute regarding liability or amount"). However, the majority view is that the existence of a dispute over either the underlying liability or the amount of the debt does not automatically render a debt either "contingent" or "unliquidated." *See Mazzeo,* 131 F.3d at 304–305 (citing cases); *see also Vaughn,* 276 B.R. at 326; *Mitchell,* 255 B.R. at 360; *In re Jordan,* 166 B.R. 201, 202 (Bankr.D.Me.1994). As the Second Circuit observed:

> The [Bankruptcy] Code uses both "unliquidated" and "disputed" in its definition of "claim"; to rule that a claim (and hence the debt with which it is coextensive) is unliquidated whenever it is disputed would be to render the term "unliquidated" mere surplusage. Such an interpretation would also allow a debtor, simply by characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in circumstances that Congress plainly intended to exclude from that chapter. We conclude that effect must be given to both terms, and we agree with the Eleventh Circuit and that "the concept of a liquidated debt relates to the amount of liability, not the existence of liability."

*Mazzeo,* 131 F.3d at 304–05 (quoting *Verdunn,* 89 F.3d at 802).

Although the Debtors dispute their liability regarding the Creditors' claims, that fact alone does not render the Creditors' claims unliquidated. If the amounts owed on the Creditors' claims are readily calculable, the claims are liquidated regardless of whether the Debtors dispute liability. *See In re Scovis,* 249 F.3d 975, 984 (9th Cir.2001). Unfortunately, the appellate record does not contain copies of the Creditors' proofs of claim or other information on the computation of the amount of the Creditors' claims. Consequently, the Panel is unable to determine whether the bankruptcy court's ruling that the total claims exceeded the limits of § 109(e) and, therefore were "readily ascertainable," was clearly erroneous.

## III. Dismissal under § 1112

 Section 1112(b) empowers the bankruptcy court to convert or dismiss a Chapter 11 case "for cause, including—(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; and (3) unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1112(b)(1)-(3). Upon the requisite showing of cause, it is up to the court to choose between dismissal or conversion, "whichever is in the best interest of creditors and the estate." 11 U.S.C. § 1112(b). The standard for choosing between conversion or dismissal based on "the best interest of creditors and the estate" implies application of a balancing test by the bankruptcy court. *See In re Staff Inv. Co.,* 146 B.R. 256, 260 (Bankr. E.D.Cal.1992). The legislative history shows that Congress intended to invest the bankruptcy court with "wide discretion . . . to make an appropriate disposition of the case" and "to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95th Cong., 2d Sess. 406, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6361–62. Accordingly, a bankruptcy court's decision to dismiss a Chapter 11 case for cause should be affirmed on appeal absent an abuse of discretion, or the application of an erroneous legal standard. *See Abijoe Realty,* 943 F.2d at 128.

 The bankruptcy court concluded that there had been a "unreasonable

delay prejudicial to creditors," and dismissed the case. *See* 11 U.S.C. § 1112(b)(3) (permitting court to dismiss or convert a case based on "unreasonable delay prejudicial to creditors"). As the language suggests, there are two requirements for dismissal under subsection (b)(3): first, the debtor must have engaged in some form of unreasonable delay, and second, the delay must be prejudicial to creditors. *See* 11 U.S.C. § 1112(b)(3). Although the statute does not enumerate specific kinds of delays, the most obvious example of an unreasonable delay prejudicial to creditors is the unjustified failure to file a reasonable plan of reorganization in a timely fashion. A debtor's failure to file a plan over a long period of time can also be evidence that there is no prospect for reorganization and that the debtors are unable to effectuate a plan under §§ 1112(b)(1) & (2). *See In re Powell Bros. Ice Co.*, 37 B.R. 104, 106 (Bankr.D.Kan.1984). Whether the period during which a debtor fails to file a plan constitutes a "reasonable period of time" will depend upon the unique circumstances of each case. *See Quarles v. United States Trustee*, 194 B.R. 94, 97 (W.D.Va.1996). However, if significant administrative expenses have accrued, the debtor's delay is not justified, and the process shows no immediate prospect of yielding a plan acceptable to creditors, the court is justified in dismissing the case. *See, e.g., Sullivan Cent. Plaza I, Ltd. v. BancBoston Real Estate Cap. Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir.1991) (failure to file plan within 14 months and relief from stay); *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989) (failure to file plan within 8 months); *Koerner v. Colonial Bank (In re Koerner)*, 800 F.2d 1358, 1368 (5th Cir. 1986) (failure to file plan and disclosure statement within 16 months); *In re Robino*, 243 B.R. 472, 485–86 (Bankr.N.D.Ala. 1999) (failure to file plan before termi-

nation of 120–day exclusivity period, as well as failure to explain why plan had not been filed as required by operating order); *In re Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y.1995) (failure to file a plan within 16 months was unreasonable and warranted dismissal).

■ From the record before the Panel, we cannot find that the bankruptcy court abused its discretion in dismissing this case for cause. First, this case had been pending for 14 months, and had been in Chapter 11 for almost a year. Since conversion to Chapter 11 in March, 2004, the Debtors had yet to submit a disclosure statement and plan for approval despite a bankruptcy court order establishing a specific deadline for filing the same. This case does not appear to be overly complex requiring an extraordinary amount of time to develop and propose a plan. The lengthy amount of time evidences no prospect for rehabilitation and the Debtors' inability to effectuate a plan. Dismissal was warranted on this ground alone. *See In re Powell Bros.*, 37 B.R. at 106.

The bankruptcy court was also troubled by the fact that the success of the Debtors' reorganization hinged on their prevailing in an adversary proceeding which had just been filed a few weeks prior to the trial, and which was "highly speculative." On February 9, 2005, the Debtors filed an adversary complaint against Creditor Hernandez seeking to set aside as a preferential transfer his pre-petition attachment of stock that the Debtors hold in Lupi's Enterprises. The Debtors claim that if they recover possession of the Lupi's stock, they will sell the stock and use the proceeds to pay creditors. At trial, however, questions arose as to whether the attachment even took place during the 90–day period preceding the bankruptcy filing, a prerequisite for recovery of a preferential transfer. Based on the evidence present-

ed, the bankruptcy court was justified in concluding that the adversary proceeding to recover the stock was too speculative, and consequently, that the Debtors had little likelihood of rehabilitation since reorganization hinged on recovery of the stock.

### CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order denying the Debtors' motion to convert their Chapter 11 case to a Chapter 13 case, and dismissing the bankruptcy case.