Rosa M. TORRES MARTINEZ, Debtor.

Rosa M. Torres Martinez, Appellant,

v.

Wilfredo Rivera Arce, Appellee.

BAP No. 07–035.
Bankruptcy No. 02–06538–SEK.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 1, 2008.

Francisco J. Ramos González, Esq., and Jaime L. Velasco Bonilla II, Esq., on brief for Appellant.

Lyssette Morales Vidal, Esq., on brief for Appellee.

Before BOROFF, DEASY and ROSENTHAL, United States Bankruptcy Appellate Panel Judges.

BOROFF, Bankruptcy Judge.

Rosa M. Torres Martinez (the "Debtor") appeals from the October 16, 2006 order entered by the United States Bankruptcy Court for the District of Puerto Rico. That order dismissed the Debtor's Chapter 13 case, pursuant to 11 U.S.C. § 1307(c), on the grounds of her bad faith in filing the petition. For the reasons set forth below, we **AFFIRM**.

### BACKGROUND

#### A. Pre–Petition Events

Wilfredo Rivera Arce (the "Appellee") is the Debtor's former spouse. After their divorce, the Debtor and the Appellee engaged in six years of protracted litigation in the Carolina Superior Court of Puerto Rico with respect to the division of their community property. On May 10, 2000, that court entered a judgment, which divided their community property and awarded the Appellee the sum of $20,000 from the Debtor.

The Debtor filed her first bankruptcy case under Chapter 7 of the Bankruptcy Code[1] in January of 1998 (Bankruptcy Case No. 98–00227), and received a discharge in June of 1998. Approximately three months after she filed her Chapter 7 petition, the Debtor's father passed away. The Debtor did not amend her bankruptcy schedules or otherwise disclose to the bankruptcy court or to the Chapter 7 trustee her interest as a beneficiary of her father's estate.

In July of 2000, a few months after entry of the $20,000 state court judgment against her, the Debtor sold one of the real properties inherited from her father for the sum of $190,000. The Debtor did not pay anything to the Appellee from the proceeds of the sale. Instead, she used her inheritance and a contribution from her mother as a downpayment to purchase a residence, executing a mortgage for the balance of the purchase price. She later refinanced the mortgage loan on two occasions, most recently with R & G Mortgage in April of 2002. On January 29, 2001, the Debtor's mother died. The Debtor was also a beneficiary of her mother's estate.

#### B. This Chapter 13 Case

On June 19, 2002, the Debtor filed the instant Chapter 13 case. In her schedules, statement of financial affairs, and Chapter 13 plan, she listed only three creditors: R & G Mortgage and Mueblerias Berrios as secured creditors, and the Appellee as the sole unsecured creditor. She did not disclose her interest in the estates of her deceased parents.

Pursuant to the plan, the Debtor proposed to pay Mueblerias Berrios' secured claim and all priority claims through the plan, and maintain regular payments directly to R & G Mortgage. The unsecured claimant, the Appellee, would receive the sum of $429.00–over time. The Appellee did not object to the plan, and, after a hearing, the bankruptcy court entered an order on November 5, 2002, confirming the plan. The Appellee did not appeal the confirmation order. Instead, on November 8, 2002, the Appellee filed a motion requesting the bankruptcy court to set aside the confirmation order *and* to dis-

---

1. The Debtor's Chapter 13 case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, Title III, § 302, 119 Stat. 23 (2005). Accordingly, unless expressly stated otherwise, all references to the "Bankruptcy Code" or to statutory sections herein are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101, et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

miss the case pursuant to § 1307(c) on account of the Debtor's bad faith in filing the case. The bankruptcy court denied the motion, without prejudice, on the grounds that a request to revoke confirmation was required by Bankruptcy Rule 7001(5) to be in the form of an adversary proceeding.[2] The bankruptcy court failed to address the Appellee's separate request that the case be dismissed.

On November 22, 2002, almost a month after the claims bar date,[3] the Appellee filed a proof of claim reflecting a $20,000 unsecured priority claim. The Chapter 13 trustee objected to the claim arguing, *inter alia*, that the claim was time-barred pursuant to Bankruptcy Rule 3002(c) as it was filed after the deadline. The Appellee did not file an opposition, and, on March 19, 2003, the bankruptcy court issued an order sustaining the trustee's objection and disallowing the Appellee's claim.

On March 28, 2003, the Appellee filed a second motion to dismiss the case (the "Second Motion to Dismiss"), again alleging that the Debtor filed the instant bankruptcy case in bad faith and for the sole purpose of avoiding payment of the $20,000 court judgment. The Appellee did not specifically request revocation of the confirmation order. The Debtor responded with a "Motion to Dismiss [Appellee]'s Second Motion to Dismiss" (the "Debtor's Opposition Motion"), alleging, *inter alia,* that the Appellee lacked standing to pursue the Second Motion to Dismiss since his proof of claim had been disallowed and he no longer had a pecuniary interest in the case. On March 29, 2004, the bankruptcy court entered an Order (the "Standing Order"), denying the Debtor's Opposition

Motion and concluding that the Appellee had sufficient interest in the dismissal of the case to satisfy the standing requirement. Although the Debtor filed a timely appeal of that decision, the Panel concluded that the order was interlocutory and dismissed the appeal.

The bankruptcy court held a trial on the Second Motion to Dismiss on July 6, 2005. On October 16, 2006, the bankruptcy court entered an Order (the "Dismissal Order") dismissing the case, pursuant to § 1307(c), supported by a finding that the Debtor had not filed the case in good faith. The Dismissal Order is before us on the Debtor's timely Notice of Appeal.

### ISSUES ON APPEAL

The Debtor essentially raises four issues on appeal:

1. whether the Appellee had standing as a party in interest to seek dismissal of the Chapter 13 case under § 1307(c);

2. whether, relying on the finality of the confirmation order, the doctrine of *res judicata* precluded any challenge to the Debtor's good faith in filing her case;

3. whether the bankruptcy court erred in concluding that the Debtor filed her case in bad faith; and

4. whether the Second Motion to Dismiss was really an "effort to revoke debtor's confirmation" and, therefore, time barred by the 180–day limitation set forth in § 1330(a), and procedurally defective since it was not filed as an adversary proceeding

---

**2.** Pursuant to Bankruptcy Rule 7001(5), "a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan" must be brought in an adversary proceeding. *See* Fed. R. Bankr.P. 7001(5).

**3.** On June 20, 2002, the clerk of the bankruptcy court notified parties in interest that the last day to file claims was October 28, 2002. The Appellee admits that he received this notice.

as required by Bankruptcy Rule 7001(5).

## JURISDICTION

■ A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998). A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). A bankruptcy court's order dismissing a Chapter 13 case under § 1307(c) is a final, appealable order. *See Gonzalez–Ruiz v. Doral Fin. Corp. (In re Gonzalez–Ruiz)*, 341 B.R. 371, 375 (1st Cir. BAP 2006) (citing *Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493, 505 (1st Cir. BAP 2005)).

## STANDARD OF REVIEW

■ The Panel generally reviews findings of fact for clear error and conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994).

■ The Panel reviews the question of the Appellee's standing *de novo*. *See Brown v. Sobczak (In re Sobczak)*, 369

B.R. 512, 516 (9th Cir. BAP 2007). The applicability of the *res judicata* doctrine also presents a question of law requiring *de novo* review. *See R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir.2006).

■ The Panel reviews the bankruptcy court's decision to dismiss the bankruptcy case under § 1307(c) for abuse of discretion. *See Roberts v. Boyajian (In re Roberts)*, 279 F.3d 91, 92 (1st Cir.2002). A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *See Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 570 (1st Cir. BAP 2002) (citation omitted). The determination of bad faith is "a fact intensive determination better left to the discretion of the bankruptcy court." *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996). Accordingly, the Panel will not set aside the bankruptcy court's finding of bad faith unless that finding is clearly erroneous. *See id.*

## DISCUSSION

### I. Standing

■ The Debtor contends that the bankruptcy court erred in dismissing her case because the Appellee lacked standing to request such relief. The bankruptcy court addressed the Debtor's arguments in the Standing Order. Although the Debtor did not preserve her appeal of the Standing Order,[4] the matter is properly before us because standing is a jurisdictional issue that may be raised at any time. *See In re Dein Host, Inc.*, 835 F.2d 402, 404 (1st Cir.1987) (noting that court is "duty bound" to determine appellate standing) (citing *Orr v. Orr*, 440 U.S. 268, 271, 99

4. Although the Debtor filed a notice of appeal within 10 days of the Standing Order, the Panel dismissed the appeal as interlocutory. But the Debtor could have appealed the Standing Order when it became final upon entry of the Dismissal Order. She did not.

S.Ct. 1102, 59 L.Ed.2d 306 (1979)); *Great Road Serv. Ctr., Inc. v. Golden (In re Great Road Serv. Ctr., Inc.)*, 304 B.R. 547, 550 (1st Cir. BAP 2004) ("[Q]uestions of standing must be considered sua sponte as it is akin to subject matter jurisdiction.").

 Pursuant to § 1307(c), only the U.S. Trustee or a party in interest is authorized to request dismissal of a bankruptcy petition for cause. *See* 11 U.S.C. § 1307(c). A party in interest is defined as one "whose pecuniary interests are directly affected by the bankruptcy proceedings." *See In re Davis*, 239 B.R. 573, 579 (10th Cir. BAP 1999). The Debtor argues that a purported claimant whose claim has been disallowed no longer has a pecuniary interest in the case and, therefore, cannot be a party in interest with standing to seek dismissal of a bankruptcy petition under § 1307(c). We disagree. The Appellee had a pecuniary interest in this case that was not affected by the disallowance of his claim. The disallowance of the Appellee's claim only curtailed his right to payment under a confirmed plan which would have discharged his claim were the plan fully performed. But were the case dismissed for any reason, as occurred here, the Appellee's claim would not have been discharged. Accordingly, the Appellee had a pecuniary interest in the case sufficient for the Appellee to seek its dismissal.

## II. *Res Judicata* Effect of Confirmed Chapter 13 Plan

The Debtor argues that the bankruptcy court erred in dismissing her case for bad faith in filing her petition because the doctrine of *res judicata* arising from the finality of the plan confirmation order precluded any challenges to her good faith. According to the Debtor, because confirmation requires a finding that the *plan* was proposed in good faith, the bankruptcy court must have found that the Debtor also filed her *petition* in good faith. Therefore, the binding effect of the confirmation order under § 1327(a) would preclude any challenge to the Debtor's good faith in filing the case *ab initio*.

### A. Preclusion Principles

 Although the Debtor refers to *res judicata*, it is important to note that there are two distinct preclusion concepts: claim preclusion and issue preclusion. "It is not uncommon for courts . . . to refer to both preclusion concepts as falling under the broad rubic of '*res judicata*.'" *In re Ellis*, 345 B.R. 11, 17 n. 6 (Bankr.D.Mass. 2006) (citing cases). However, the term "*res judicata*" should be used to refer specifically to claim preclusion,[5] while the term "collateral estoppel" refers specifically to issue preclusion.[6] *Id.* The Supreme

---

5. The essential elements of *res judicata* (or claim preclusion) are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30–31 (1st Cir.1994) (citations omitted). Once these elements are established, claim preclusion bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation. *Id.*

6. The principle of collateral estoppel (or issue preclusion), bars relitigation of any factual or

legal issue that was actually decided in previous litigation "between the parties, whether on the same or a different claim." *Id.* (citations omitted). When there is an identity of parties in subsequent actions, a party must establish four elements for an issue to be precluded in the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. *See id.*

Court has distinguished these two concepts as follows:

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation on the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact of determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

### B. Plan Confirmation— § 1325

■■■ Pursuant to § 1327(a),[7] the provisions of a confirmed plan are binding on the debtor and all creditors. *See* 11 U.S.C. § 1327(a). A leading bankruptcy authority has said that "the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan," 8 Collier on Bankruptcy, ¶ 1327.02, at 1327–3 (15th ed.1998), and that it is "quite clear that the binding effect ... extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order." *Id.* at 1327–5. Consequently, because a plan cannot be confirmed unless it was proposed in good faith, a confirmation order precludes creditors from subsequently arguing that the plan failed the good faith test. However, the Debtor goes further and argues that the confirmation order also precluded any request for dismissal on the grounds of

bad faith in filing the petition. Again, we disagree.

For the confirmation order to have the preclusive effect suggested by the Debtor, this Panel would have to conclude that the bankruptcy court either determined or could have determined the Debtor's good faith in filing the petition as part of the confirmation proceedings. However, because this case commenced prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), there was no requirement that the bankruptcy court find that the petition was filed in good faith as part of the confirmation process. *See* 11 U.S.C. § 1325(a).

There are two separate and distinct tranches of good faith in Chapter 13 cases. The debtor must *both* have filed the Chapter 13 case in good faith and proposed the Chapter 13 plan in good faith. The Bankruptcy Code has always contained the latter requirement and dictated that it be met in order that a Chapter 13 plan be confirmed. *See* 11 U.S.C. § 1325(a)(3). However, prior to BAPCPA, the former was a product of case law that held that bad faith in filing the Chapter 13 case could be grounds for dismissal "for cause" under § 1307(c). That changed with BAPCPA. Now, confirmation of a Chapter 13 plan requires a finding as a condition to plan confirmation that "the action of the debtor in filing the petition was in good faith." *See* 11 U.S.C. § 1325(a)(7). But that requirement was not applicable to this pre-BAPCPA case.[8] When confirming the Chapter 13 plan in this case, the Debtor's good faith in filing her petition was

---

7. "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

8. As a new provision under BAPCPA, § 1325(a)(7) is only applicable in cases filed on or after October 17, 2005.

neither raised nor litigated, nor was the bankruptcy court required to make that determination.[9] Accordingly neither claim nor issue preclusion apply.

### III. Dismissal Pursuant to § 1307(c)

■ Section 1307(c) of the Bankruptcy Code provides that, on request by a party-in-interest and after notice and a hearing, the court, *for cause,* may dismiss a case under Chapter 13 or convert the case to Chapter 7, whichever is in the best interest of the creditors and the estate. *See* 11 U.S.C. § 1307(c). The list of grounds for dismissal found in § 1307(c) is not exhaustive and the court is not limited by the specific circumstances listed there. Although lack of good faith is not specifically enumerated as "cause," it is well established that a debtor's lack of good faith in filing a Chapter 13 case is sufficient for dismissal of that case. *See In re Cabral,* 285 B.R. at 573 (citing cases).

Courts use different approaches in order to determine whether a debtor has filed a bankruptcy petition in good faith, although the majority favor a "totality of the circumstances" test. *See Gonzalez–Ruiz,* 341 B.R. at 382 n. 14 (citing cases). One of our panels took a slightly different approach in *Keach v. Boyajian (In re Keach),* 243 B.R. 851, 856 (1st Cir. BAP 2000), warning that a bankruptcy court's primary analysis should not focus upon a debtor's prepeti-

tion history if the instant case demonstrated a debtor's simple honesty of purpose. Other panels and courts have criticized *Keach,*[10] and opted for the more expansive "totality of the circumstances" test. *See, e.g., In re Sullivan,* 326 B.R. 204, 210–11 (1st Cir. BAP 2005); *In re Dicey,* 312 B.R. 456, 458 (Bankr.D.N.H.2004); *In re Fleury,* 294 B.R. 1, 5 (Bankr.D.Mass.2003); *In re Scotten,* 281 B.R. 147, 149 (Bankr. D.Mass.2002); *In re Virden,* 279 B.R. 401, 407 (Bankr.D.Mass.2002). Applying the totality of the circumstances in the present case, the bankruptcy court concluded that the Debtor filed her petition in bad faith and dismissed her case. Regardless of how the good faith standard is shaped, we cannot review the bankruptcy court's bad faith finding due to the lack of an adequate record.

■ The Debtor contends that the bankruptcy court erred in reaching its conclusions. As the appellant, the Debtor bears the responsibility of providing this court with all transcripts necessary to address the issues raised on appeal. *See Sanabria v. Int'l Longshoremen's Ass'n,* 597 F.2d 312, 313 (1st Cir.1979); *see also In re Abijoe Realty Corp.,* 943 F.2d 121, 123 n. 1 (1st Cir.1991) ("The responsibility for voids in the appellate record must reside with the party whose claim of error depends for its support upon any portion of the record of the proceedings below

---

9. Clearly, the result could be very different in a post-BAPCPA case. In cases arising after BAPCPA's effective date, the bankruptcy court is required to consider both whether the plan was proposed in good faith (§ 1325(a)(3)) and whether the petition was filed in good faith (§ 1325(a)(7)) when confirming a Chapter 13 plan.

10. As was noted in *In re Hadsell,* 327 B.R. 520, 525 n. 8 (Bankr.D.Mass.2005):

A court's consideration of postpetition honesty of purpose is frequently informed by a debtor's prepetition conduct. *In re Keach,*

243 B.R. at 868–71.[But] *Keach* stands for a more subtle proposition: that a court may not alter rights that a debtor has been granted by Congress (e.g., the right to make a new non-serial Chapter 13 filing; the right to pay a dividend unaffected by the nature of a debt which Congress has expressly declared dischargeable; and the right to then discharge that debt) by determining that those rights are unfair or inequitable based on the court's distaste for Congress' choices. *In re Keach,* 243 B.R. 851.

which was omitted. . . ."). Although the Debtor properly included the trial transcript as part of the record on appeal, most of the hearing was conducted in Spanish despite the well settled rule that "federal litigation in Puerto Rico [must] be conducted in English." *Estades–Negroni v. Assocs. Corp. of N. Am.*, 359 F.3d 1, 2 (1st Cir.2004) (citing 48 U.S.C. § 864 (2003)). To her credit, the bankruptcy judge warned the parties that they were well-advised to conduct the hearing in English and that failure to do so might be problematic on appeal. However, the parties agreed to proceed with the hearing in Spanish and neither party has provided the Panel with a translated copy of the hearing transcript. *See* 1st Cir. BAP R. 8010–1(a)(1) ("The Bankruptcy Appellate Panel will reject documents not in the English language unless translations are furnished."). If the untranslated documents are essential to the resolution of an issue on appeal, the lack of a translation undermines meaningful appellate review. *See United States v. Rivera–Rosario*, 300 F.3d 1, 10 (1st Cir.2002).

 A "bad faith" finding under § 1307(c) depends heavily on factual determinations. In this case, the bankruptcy court heard testimony from the Debtor, considered her demeanor and credibility, as well as other documentary evidence, and ultimately determined that she had filed her case in bad faith. Without an adequate transcript of the hearing, we are unable to review the testimony considered by the bankruptcy judge and cannot determine whether her evaluation of the evidence or her assessment of the credibility of the witnesses constituted clear error. Since the hearing testimony is essential to determination of the issue before us, the lack of a translation precludes our review. Accordingly, the Debtor has not met her burden on appeal, and we have no option but to conclude that the bankruptcy court did not err in finding that the Debtor filed the instant case in bad faith and that the bankruptcy court acted appropriately in dismissing the case under § 1307(c).

## IV. Revocation of Confirmation

 The Debtor devotes a substantial portion of her brief arguing that the Appellee's "effort to revoke debtor's confirmation" was time barred by the 180–day limitation set forth in § 1330(a), and was procedurally defective because it was not filed as an adversary proceeding, required by Bankruptcy Rule 7001(5). The Debtor fails to recognize that the Appellee did not seek revocation of the confirmation order as part of his Second Motion to Dismiss, nor did the bankruptcy court revoke the confirmation order. Accordingly, neither the time limitations of § 1330 nor the procedural requirements of Bankruptcy Rule 7001(5) are applicable.[11]

The Bankruptcy Code does not provide a deadline for the filing of motions to dismiss under § 1307(c). Although the Debtor urges the Panel to incorporate § 1330(a)'s 180–day limitation into § 1307(c), we decline to do so. We are not a legislative body.

---

11. Of course, the Debtor could have argued that the Second Motion to Dismiss was barred by the doctrine of laches. Laches in an "affirmative defense that serves as a bar to a claim for equitable relief 'where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party.'" *Murphy v. Timberlane Reg'l School Dist.*, 22 F.3d 1186, 1189 (1st Cir.1994) (citations omitted). The Debtor did not, however, raise the doctrine of laches before the bankruptcy court nor did she argue it on appeal. And even if the Debtor had raised the issue, we can discern no prejudice that the Debtor suffered on account of the alleged untimeliness.

## V. Request for Attorney's Fees

■ Finally, in his brief, the Appellee requests that the Debtor be ordered to pay his attorneys' fees related to this appeal. Bankruptcy Rule 8020, which adopts Rule 38 of the Federal Rules of Appellate Procedure, provides:

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R. Bankr.P. 8020. A prerequisite to awarding sanctions under Bankruptcy Rule 8020 is that the movant meet the procedural requirements of that rule. *See Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 734 (1st Cir. BAP 2002). Here, the Appellee did not meet the procedural requirement of Bankruptcy Rule 8020 because he did not request attorneys' fees through a separately filed motion. Thus, the request must be denied.

### *CONCLUSION*

For the reasons set forth above, we **AFFIRM** the bankruptcy court's October 16, 2006 Order dismissing the Debtor's Chapter 13 case, pursuant to 11 U.S.C. § 1307(c). The Appellee's request for attorneys' fees is **DENIED.**