**In re Ellen Flanders BROOKS, Debtor.**

**Synovus Bank formerly known as Columbus Bank and Trust Company as Successor in interest through name change and by merger with Peachtree National Bank, Movant**

v.

**Ellen Flanders Brooks, Respondent.**

**No. 11–10365–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Feb. 7, 2013.

---

Noel J. Bartels, Cameron M. McCord, Jones & Walden, LLC, Atlanta, GA, for Debtor.

R. Jeneane Treace, Office of the United States Trustee, Atlanta, GA, U.S. Trustee.

### ORDER GRANTING MOVANT'S MOTION TO DISMISS OR CONVERT

W. HOMER DRAKE, JR., Bankruptcy Judge.

Currently before the Court is a Motion to Dismiss or Convert and Alternatively for Stay Relief (hereinafter "Motion") filed by Synovus Bank (hereinafter the "Movant" or "Synovus") in the above styled bankruptcy proceeding of Ellen Flanders Brooks (hereinafter the "Respondent" or "Debtor"). The Respondent opposes the Movant's Motion, and this matter constitutes a core proceeding over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (G), & (K); § 1334.

This Motion came before the Court for an evidentiary hearing and legal argument on December 12, 2012. After considering the pleadings, presentations of counsel, evidence, and any judicially noticed facts, the following constitutes the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT AND PROCEDURAL HISTORY

On February 1, 2011, the Debtor commenced this bankruptcy case by seeking relief under Chapter 11 of the Bankruptcy Code. The Debtor is an individual who owns and operates rental properties located in Georgia, Alabama, and Tennessee. According to the Debtor's Schedules, her combined assets total $4,308,261.98, with the greater majority of those assets being real property ($4,225,796.00). *See* Resp't Schedules, 28, ECF No. 34. The Respondent's debts consist of $6,618,477.74 in secured claims, $30,504.64 in unsecured priority claims, and $29,245.20 in unsecured nonpriority claims. *Id.*

Since the pendency of this case, the Respondent has diligently satisfied her reporting obligations by submitting her monthly operating disclosures to the Court. These reports reveal that Respondent has two primary sources of income, rental income and unemployment benefits. In the most recent operating report, the Debtor's cumulative individual and busi-

ness income for the past 22 months was listed as $62,661.86. *See* Resp't Monthly Operating Report, 2, ECF No. 187. During that time, the cumulative household and business expenses have been $57,785.30 for a net income of $4,876.56. *Id.* As of the date of the hearing, no Plan had been proposed in this bankruptcy proceeding.

Two unresolved issues have stunted the progress of this case. First, the Debtor owns property known as 7403 Graham Road, Fairburn, Georgia (hereinafter the "Fairburn Property"). The property is subject to a first priority lien held by United Community Bank (hereinafter "UCB") in the principal amount of $934,773.56. *See* Interim Cash Collateral Order, 2, ECF No. 27. A proof of claim was filed in the amount of $1,265,599.84. *See* Proof of Claim 13–2, 1, Jan. 17, 2012, ECF. At some point after March 11, 2011, the Fairburn Property suffered extensive flood and fire damage, and an insurance claim was filed with the Hanover Insurance Group (hereinafter "HIG"). *See* Order Denying Use of Cash Collateral, 2, ECF No. 155. Pursuant to the policy agreement, HIG immediately made available $275,805.60 as the "net cash value" of the claimed loss, and offered up to an additional $180,494.00, for actual remedial costs incurred, if repairs were completed within 180 days of the date of HIG's letter of January 23, 2012. *Id.* The Respondent sought to use the immediately available proceeds to repair the Fairburn Property, but the Court denied this use, finding that the proceeds belonged to the "Loss Payee," which in this case was UCB, and that the Respondent's estate had no interest in the insurance policy or the proceeds therefrom, and therefore, holding that these items were not part of the bankruptcy estate. *Id.* at 6–7.

During the Spring of 2012, the Fairburn Property also suffered vandalism and theft, prompting a second insurance claim with HIG in the amount of $500,000.00. Respondent has failed to resolve either claim with HIG.

Second, the Respondent has been involved in litigating the matter currently before the Court. Synovus Bank is the holder of a note executed by Frank B. Flanders in the original amount of $320,000.00 (hereinafter the "Note"). *See* Pls's Ex. 2. The Note was secured by a first priority lien on real property, owned by the grandchildren of Mr. Flanders and known as 4811 Flat Shoals Road in Union City, Fulton County, Georgia (hereinafter the "Flat Shoals Property"). *Id.* The Note was also secured by a first priority lien on real property, owned by Respondent and known as 5565 New Peachtree Road in DeKalb County, Georgia (hereinafter the "Peachtree Property"). *See* Movant's Ex. 1. In Frank B. Flanders' separate bankruptcy case, the Court granted Synovus relief from the stay as to the Flat Shoals Property. After having the property appraised by an independent third party, Synovus was the highest bidder at the foreclosure sale with a bid $225,750.00. *See* Order Denying Mot. in Limine, 3, ECF No. 178. Synovus, however, failed to confirm the sales price with the Superior Court in accordance with the Official Code of Georgia Annotated (hereinafter "O.C.G.A") § 44–14–161[1]. *Id.*

---

1. O.C.G.A. § 44–14–161 states that "When any real estate is sold on foreclosure ... and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon."

Synovus filed this Motion on May 31, 2012, seeking to have the case dismissed or converted, or seeking, alternatively, to obtain relief from the stay. *See* Movant's Mot. to Dismiss or Convert or Alternatively for Stay Relief, ECF No. 147. Anticipating that the Debtor intended to challenge Synovus's Flat Shoals's bid price for failure to confirm and, consequently, challenge the balance remaining on the Note, Synovus filed a Motion in Limine to exclude any evidence pertaining to the valuation of the Flat Shoals Property. *See* Movant's Mot. in Limine, ECF No. 167. The Court denied the Creditor's Motion in Limine, concluding that, although Synovus would legally be able to pursue foreclosure on Respondent's collateral outside of bankruptcy and under Georgia state law [2], such a state right is tempered by a doctrine of inherent fairness, present while under the exclusive equitable jurisdiction of a bankruptcy court. *See* Order Denying Mot. in Limine, 3, ECF No. 178.

On December 12, 2012, the Court heard oral argument and evidence pertaining to both the Motion to Dismiss or Convert and the Motion for Relief from the Stay [3]. The Debtor testified that she intends to file a plan, "as soon as possible," once all unresolved matters are settled, which would contain the following stipulations:

1. Liquidating two lots located in Gatlinburg, Tennessee and scheduled by the Debtor with $20,000 in equity;

2. Liquidating two parcels of approximately sixty total acres located in Fayette County, Georgia and scheduled with $349,440 in equity;

3. Processing the HIG insurance claims and liquidating the Fairburn Property, scheduled, prior to the casualty damage, vandalism, and theft, at a value of $1,500,000 and subject to the claim of UCB in the amount of $1,265,599.84;

4. And on condition that the Court finds Synovus's claim to the Peachtree Property to be satisfied partially or in its entirety [4], liquidating the one acre undeveloped lot located on New Peachtree Road, Chamblee, Georgia 30341 and scheduled by the Debtor with a minimum of $182,000 in equity.

Resp't Trial Test. 10:38:18–10:48:42.

Although extensive testimony and evidence were presented as to the values of the Flat Shoals Property and the Peachtree Property, the Court does not see a need, at this time, to delve too deeply into matters more directly related to the alternative motion. Presently, the Court is satisfied that a sale of the Flat Shoal's property at fair market value would not have satisfied the entirety of Synovus's claim.

---

**2.** Lack of complicity with O.C.G.A. § 44–14–161 only eliminates a creditor's right to seek a deficiency judgment against the person whose property was foreclosed upon and does not preclude a creditor from pursuing its interest in other collateral put forward as additional security.

**3.** After hearing legal argument and evidence pertaining to Movant's Motion to Dismiss or Convert, the Court took that matter under advisement and asked the parties to proceed with the alternative motion, in the event that

this matter could not be resolved on the primary motion before the Court.

**4.** The Respondent currently seeks to establish that had Synovus sold the Flat Shoals Property at approximately market value, its claim would have been satisfied in its entirety, leaving a completely unencumbered asset for the Debtor to use in crafting a Plan of reorganization. Because the Court intends to resolve this matter on the Motion to Dismiss or Convert, the Court shall not delve into the details of that inquiry today.

## CONCLUSIONS OF LAW

### A.

█ As a threshold matter, the Court feels compelled to direct its attention to whether Synovus has standing to move the Court for dismissal under Section 1112(b), prior to the Court determining the balance of Synovus's secured claim. The Movant asserts that if foreclosure, at fair market value, of the Flat Shoals Property would have satisfied Synovus's lien, then Synovus is not entitled to any claim on the Respondent's property and would no longer have standing to request dismissal or conversion in this case. *See* Debtor's Resp. to Synovus Bank Mot. to Dismiss or Convert and Alternatively for Stay Relief, 3, ECF No. 180. This Court is convinced, by the evidence presented, that Synovus's claim would not have been completely satisfied, but even if Synovus's claim was deemed satisfied in its entirety by the Court, Synovus would still retain the creditor status necessary to petition for dismissal.

11 U.S.C. § 1112(b) provides that "on request of a party in interest," the Court may dismiss a case for cause after notice and a hearing. Section 1109(b) specifically includes a "creditor" as a "party in interest," and the Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before" the petition date. 11 U.S.C. §§ 1109 & 101(10). Thus, a creditor who possesses a "claim" has standing to request a dismissal of a Chapter 11 case under Section 1112(b) of the Code.

█ The Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Generally,

courts have concluded that the interpretation of "claim" should encompass the "broadest, possible definition." *See In re Abijoe Realty Corp.,* 943 F.2d 121, 125 (1st Cir.1991) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 309); *Johnston v. Jem Dev. Co.,* 149 B.R. 158 (9th Cir. BAP 1992). As such, some courts have found that until such time as a claim has been disallowed, the creditor has standing to move the Court for dismissal. *Abijoe Realty Corp.,* 943 F.2d at 126; *Johnston,* 149 B.R. at 161. Furthermore, where a claim has been disallowed in bankruptcy, but persists outside of bankruptcy should the case ever be dismissed before discharge, the claimant holds a satisfactory interest for the purposes of seeking dismissal. *See Torres Martinez v. Arce,* 397 B.R. 158 (1st Cir. BAP 2008) (finding that the disallowance of a claim only "curtailed [the creditor's] right to payment under a confirmed plan" and recognizing that, were the case dismissed for any reason, the claimant's claim would not be discharged, resulting in the creditor having a pecuniary interest sufficient to seek dismissal under Section 1307[5] of the Code).

In this case, the Court previously recognized that outside of these bankruptcy proceedings, Synovus would have an unqualified right, under Georgia state law, to pursue any additional collateral securing its lien. *See* Order Denying Movant's Mot. in Limine, 7, ECF No. 178. Because of its right outside the jurisdiction of this Bankruptcy Court, even if it were deemed that Synovus's claim should have been satisfied by the foreclosure of the Flat Shoals Property, the Movant would still retain a sufficient interest in the outcome, satisfactory for pursuing its Motion.

---

**5.** Section 1307 uses the same language as Section 1112(b), "party in interest," for deter-

mining who has a right to move the Court for dismissal under that Chapter.

## B.

 Section 1112(b) of the Code establishes a mechanism by which parties in interest can request dismissal of a Chapter 11 Case:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). In assessing a motion made under Section 1112(b), the movant bears the burden of establishing "cause by a preponderance of the evidence," *see In re Babayoff*, 445 B.R. 64, 76 (Bankr.E.D.N.Y.2011) (internal citations omitted), and a bankruptcy court has "wide discretion" to determine if cause exists. *See Id.*

The Code adds further complexity by having a rebuttal provision, whereby the Court should not convert or dismiss a Chapter 11 case, despite a finding of cause, if it finds and identifies (1) "unusual circumstances" establishing that conversion or dismissal is not necessarily in the best interest of creditors and the estate, and (2) the Debtor or another party in interest establishes the following:

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e)

and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than [substantial or continuing loss to or diminution of the estate and the absence of reasonable likelihood of rehabilitation]—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

 Together, these sections delineate the burdens of proof placed upon the parties. The Movant must first establish cause by a preponderance of the evidence. *See* § 1112(b)(1). Once cause has been established, the burden shifts to the Debtor, who must establish both that unusual circumstances exist, which justify the case continuing in Chapter 11, and that the elements of 11 U.S.C. § 1112(b)(2)(A) & (B) are satisfied. *See* § 1112(b)(2).

*Whether Cause Exists.*

 "A precise definition of 'cause' is slippery and elusive." *In re Roan Valley, LLC,* 2009 WL 6498188, *2 (Bankr. N.D.Ga.) (Drake, B.J.). Section 1112(b)(4) designates 16 circumstances in which cause can be found [6]. And while section 1112(b)(4) lists examples of what constitutes cause, that list is not exhaustive nor exclusive. *Id.* at *4; *In re Stuart,* 2005 WL 3953894, *3 (Bankr.N.D.Ga.2005) (Bihary, B.J.); *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984).

---

**6.** The grounds listed for finding cause in Section 1112(b)(4) are each separate justifications, despite the Code's joining this list with the conjunctive "and." *See In re Roan Valley, LLC,* 2009 WL 6498188, *6 n. 1 (Bankr. N.D.Ga.) (Drake, B.J.) ("While the statute joins these factors with the conjunctive 'and,' both common sense and case law dictate that the chosen conjunction does not indicate a desire by Congress to require a Court to find that all [sixteen] factors are met before finding that cause exists to dismiss a case.") (internal citations omitted).

■ Section 1112(b)(4)(J) provides that a debtor's "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" indicates cause for conversion or dismissal of a case under Chapter 11. 11 U.S.C. § 1112(b)(4)(J). In ordinary Chapter 11 cases, the Code omits specifying a fixed time for filing a plan of reorganization. *See generally* 11 U.S.C. § 1121 (setting a time limitation for filing of a Chapter 11 Plan in small business cases, but only establishing exclusionary periods, which are not deadlines, for traditional Chapter 11 cases). However, the filing of a plan of reorganization is "central" to successful Chapter 11 cases, for a plan is the "framework for the debtor's reorganization and successful exit from bankruptcy," *In re Babayoff*, 445 B.R. 64, 78 (Bankr.E.D.N.Y.2011), and as such, "a debtor cannot wallow in [C]hapter 11[,]" indefinitely. *In re Tornheim*, 181 B.R. 161, 164 (Bankr.S.D.N.Y.1995). Thus, many courts have interpreted this provision, as it pertains to customary Chapter 11 cases, as requiring a plan within a reasonable period of time. *See e.g. In re Babayoff*, 445 B.R. at 79 ("If a debtor does not make progress toward confirmation of a plan within these time periods, or within a reasonable period of time, then relief under Section 1112(b)(4)(J) should follow"); *In re Powell Brothers Ice Co.*, 37 B.R. 104, 106 (Bankr.D.Kan.1984) ("The best rule to be extracted from these cases is that the debtor should be permitted a reasonable period of time to reorganize.") (internal quotations omitted). The reasonableness of a period should be determined on a case by case basis. *In re Powell Brothers Ice Co.*, 37 B.R. at 106–107.

■ Furthermore, a debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors, *In re Babayoff*, 445 B.R. at 79, and which is adequate justification, in and of itself, for dismissal of a Chapter 11 case for cause. *See e.g. De Jounghe v. Mender*, 334 B.R. 760, 770–771 (1st Cir. BAP 2005) (upholding the bankruptcy court's dismissal of the debtor's Chapter 11 case for unreasonable delay, prejudicial to creditors, where a debtor had been in bankruptcy for 14 months and in Chapter 11 for nearly a year and yet had failed to file a plan or disclosure statement); *In re Erkins*, 351 B.R. 218, 219 (Bankr.M.D.Fla. 2006) (denying the debtor's motion for reconsideration and upholding the original order to dismiss, which was based on the debtor's failure to propose a plan over a three year period, thus indicating little potential for successfully effectuating such a plan and creating delay that was unreasonably prejudicial to the creditor); *In re Babayoff*, 445 B.R. at 79 (finding undue delay where two years had passed without demonstrating the ability to file or confirm a feasible plan); *In re Tornheim*, 181 B.R. 161, 165 (Bankr.S.D.N.Y.1995) (finding cause to convert or dismiss present after 16 months where the debtor's "failure to file a plan ... show[ed] both unreasonable, prejudicial delay and an inability to effectuate a plan").

■ Moreover, the Code provides and courts have recognized that cause may also be established under Section 1112(b)(4)(M) where the record shows that the debtor cannot effectuate a plan of reorganization. *See* § 1112(b)(4)(M) ("[C]ause includes—inability to effectuate substantial consummation of a confirmed plan."); *see also Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989). The failure to file a plan within any reasonable period of time evidences an inability to effectuate such a plan. *See De Jounghe v. Mender*, 334 B.R. 760, 771 (1st Cir. BAP 2005) ("finding

that a debtor's failure to file a plan over a 14–month period evidenced no prospect for reorganization and an inability to effectuate a plan under § 1112(b)(1) & (2)."); *In re Erkins,* 351 B.R. 218, 219 (Bankr. M.D.Fla.2006) (denying the debtor's motion for reconsideration and upholding the original order to dismiss, where failure to propose a plan over three years suggested very little optimism for effectuating such a plan); *In re Fed. Roofing Co., Inc.,* 205 B.R. 638, 642 (Bankr.N.D.Ala.1996) ("[F]ailure to file a plan over long periods of time can be evidence of no prospect of reorganization and an inability to effectuate a plan...."); *In re Tornheim,* 181 B.R. 161, 165 (Bankr.S.D.N.Y.1995) (finding cause to convert or dismiss present after 16 months where the debtor's "failure to file a plan ... shows both unreasonable, prejudicial delay and an inability to effectuate a plan"). Such a finding may also be premised on the practical considerations of the case, and whether the Court thinks that a debtor would be able to submit a plan, achieve confirmation and carry it out. *In re Babayoff,* 445 B.R. 64, 76 (Bankr.E.D.N.Y.2011).

■ The case before us has been pending for over two years without the Debtor's proposing a plan, and no specific time frame has been communicated to the Court for submitting one. The Court is aware that outstanding issues remain in this case; however, the Court is not satisfied with the progress that has been made in resolving them. For instance, in the matter concerning the Fairburn Property, the fire and flood damage occurred the month after the Petition date, and yet, the Debtor has been unable to resolve this issue over a period of roughly 23 months. Likewise, the theft damage transpired in the Spring of 2012, and at the present, no progress has been made in recovering or resolving this claim.

Additionally, since May of 2012, the Debtor has continually litigated the matter before the Court under the belief that the Peachtree Property is necessary to the effective reorganization of the bankruptcy estate. The Debtor insists that it can file a feasible and confirmable plan by (1) using the insurance proceeds from the Fairburn Property, and by (2) liquidating the Fairburn Property, the Peachtree Property, 60 acres in Fayette County and two lots in Gatlinburg. The Court finds this highly unlikely given the circumstances in this case.

Because 180 days has passed without repairs being completed, UCB, as the "Loss Payee" under the insurance claims, is unlikely to receive any more insurance proceeds from the casualty losses, and at most, is likely to receive $500,000 from any payout for the theft and vandalism. Thus, UCB will receive, at best, a total of $775,805.60. Although no new valuations have been submitted to the Court, the Court must assume that the value of the Fairburn Property has substantially decreased due to these casualty, theft, and vandalism losses, and that the liquidation of that property is not likely to satisfy anything more than the remainder of UCB's claim.

Therefore, assuming that the Court deemed Synovus's claim to the Peachtree Property previously satisfied and found the Peachtree Property free and clear of any encumbrances for the purposes of this bankruptcy proceeding and also found the Peachtree Property to be valued at the amount advocated by the Debtor, the liquidation of the remaining proposed properties would provide, at most, $869,440 to satisfy remaining debts of approximately $5.5 million. Because the Debtor has shown no substantial revenue streams in which to satisfy the remaining debts (the Debtor has netted $4,876.56 over a 22 month period in bankruptcy), it would only

be a matter of time before such a plan fails. As such, the practical realities of this case are dismal.

Because of the Debtor's failure to file a plan within a reasonable time, unreasonable delay that has proven unfairly detrimental to the creditors, and an inability to effectuate a confirmable plan of reorganization, the Court finds that the Movant has sufficiently established cause for having this case dismissed or converted.

*Whether any Unusual Circumstances Justify Remaining in Chapter 11.*

The Debtor has failed to identify any unusual circumstances that specifically establish that it would be in the best interest of both the creditors and the Debtor to remain in Chapter 11. *See* 11 U.S.C. § 1112(b)(2). Additionally, even if such circumstances were present, the Debtor would not be able satisfy the Court that a plan could be confirmed within a "reasonable period" of time or that the grounds for dismissal could be cured within a "reasonable period" of time. *See id.* § 1112(b)(2)(A) and (B)(ii).

### C.

 There is no "bright-line test" for determining whether dismissal or conversion is more appropriate, *see In re Babayoff,* 445 B.R. 64, 81 (Bankr.E.D.N.Y. 2011), and the underlying objective is to do that which is in the best interest of both the creditors and the bankruptcy estate. *See* 11 U.S.C. § 1112(b)(1). In this case, the Court believes that the creditors have been unreasonably prejudiced by the length of time that this case has been pending in bankruptcy, and acknowledges that to convert this case to Chapter 7 would continue to unnecessarily work injury upon them.

Moreover, the appointment of a Chapter 7 Trustee will have decided disadvantages as to the estate. All of the Debtor's property would be surrendered to the Chapter 7 Trustee, and the estate would accrue unnecessary administrative costs associated with his service. Presently, the Debtor's estate possesses some real property, free of liens, which may be of some use to the Debtor outside of bankruptcy, and because of her ability to maintain more control of her negotiations, the Debtor is more likely to maximize her estate outside of bankruptcy than under Chapter 7 of the Code. For these reasons, the Court believes that dismissal is in the best interest of both the creditors and the bankruptcy estate.

### CONCLUSION

For the reasons stated herein, and based on the entire record, it is hereby **ORDERED** that Synovus Bank's Motion to Dismiss is **GRANTED** for cause under 11 U.S.C. § 1112(b)(1). The Debtor's case is hereby **DISMISSED.**

The Clerk is directed to serve a copy of this Order upon the Movant, counsel for the Movant, the Respondent, Counsel for the Respondent, and the U.S. Trustee.